I am before the Court today regarding two workers' compensation claims involving Mr. Gibson and a discussion of the interplay between the Illinois Insurance Code, the demise of Fremont Casualty Insurance, and the Illinois Insurance Guarantee Act. Mr. Gibson had worked for an employer who was insured by the Fremont Casualty Company and had filed two applications for redressment of claim. Fremont Casualty had retained counsel and had initiated hearings on the case. On June 4, 2003, after the hearing had been continued, an order was entered in the Court of California, the State of California, staying proceedings due to the conservative of Fremont Casualty Company, not the liquidation, just the conservatorship. Staying what proceedings? Staying all proceedings in general with the exception of appeals to the California Workers' Compensation Board, something that would be akin to the Illinois Workers' Compensation Commission, appeals from an arbitrator's decision. The petitioner's counsel, the defense counsel for that case, was either unaware of or indifferent to the fact that that stay order had been entered, never raised any issue of that, and proceeded with additional hearings one week after that hearing, even though his client was in conservatorship. The petitioner and the industrial commission would believe that the fact that it's a California court does not vest jurisdiction on that order on the individual petitioner. Can I ask a question about the conservation order? Yes, sir. It doesn't justify California, does it? No. Specifically, the question is the industrial commission chairman believed that that order in California could not apply to a petitioner in the State of Illinois unless the petitioner had contacts with the State of California. But the Illinois statutes and the Illinois legislature has control over the insurance companies and the operation of insurance. And at section 215 ILCS 221.1 through 10, they give full faith and credit and they apply those conservation orders. I don't care what his reasons were. This order says accepting matters before the California Workers' Compensation Appeal Board or equivalent administrative boards or organizations performing such functions in another State. Why isn't the Illinois Workers' Compensation Commission equivalent? Because it was the appeals board that would be before the commission itself after the first hearing before the arbitrator. The appeals board would be something different. It was never raised by counsel. The counsel was indifferent to the fact that the person who would become responsible for paying this case was going to be liquidated or was in fact in the process of being liquidated. The industrial commission did not apply that state order to the arbitrator. Testimony was taken without it ever being brought up to the arbitrator and purportedly was waived by the arbitrator. More importantly, after the initial conservation order, the eventual liquidation order was entered on July 2, 2003. Pursuant to the entry of the liquidation order, the specific provisions of the Illinois Insurance Guarantee Fund would apply, including Section 537.7. The Illinois Insurance Guarantee Fund is obligated to evaluate these claims. So in situations such as this, where the insurance company is bankrupt, the individual insurance has become bankrupt, that there is some remedy for the injured workers in the state of Illinois and injured workers under claims under workers' compensation claims and other claims. Because they're charged with that duty, they're obligated to investigate the claims, and they're also given certain powers. And these powers, when you see them at 537.7, allows them to set aside, they're not bound by any settlement, release, compromise, waiver, or final judgment. The legislature has seen fit to add all of those criteria into the decision, not just final judgments, not just final conclusions, but any settlement, release, compromise, or a waiver. We would believe that the initial waiver, a failure to bring up the stay of the California court, the waiver of a right to an independent medical examination, the waiver of a right to have the man on the essential issue of the psychoneural testing that their expert indicated should be reviewed by Dr. Grote, those waivers, decisions made by the Fremont Casualty Company are not binding on the Illinois Insurance Guarantee Fund, and the Guarantee Fund should have had the opportunity to investigate those and retain experts to that effect. My office, this case goes back a long, long time. My office, after the entry of the liquidation order in the original stay, entered their appearance on December 3, 2003. Can I ask you a question? Yes, sir. Which decision are you appealing from? Appealing from both of the decisions. How can you appeal from both? Because they were both consolidated and both of them were reviewed and appealed. Because of the procedural posture this case took, the case went up to the commission. It was remanded. I understand the procedural posture, but the argument has been made on cross-appeal that the initial decision is wrong and it never should have been vacated, in which case you'll be arguing against the first decision. If, on the other hand, he's wrong on his cross-appeal, you'll be arguing against the second decision. I think both decisions. You're not doing both. Both decisions contain the same practical error. Well, no, no. We understand they contain the same practical error, but we're only reviewing one decision. Which one? We are reviewing the decision of Judge Gardner. Judge Gardner is not bound by the Bankruptcy Court, and a Bankruptcy Court cannot tell a judge how to rule. Judge Gardner did find that the Bankruptcy Court vacated the decision, but he did not vacate the decision. He found that the industrial commission did not have authority because the stay had been in effect at the time of the day after oral arguments of the case before the commission on the issuance of their oral arguments. But the stay had been retroactively vacated, nullified. A Bankruptcy Court has the authority to nullify an order. A Bankruptcy Court does not have the authority to tell a circuit court judge whether they need to hear a certain case or decide certain issues. And a judge would be within his decision as to whether that decision was void in and of itself, and whether that only provides Petitioner was not in contempt of the Bankruptcy Court with continuing to proceed, and the industrial commission wasn't in contempt of the Bankruptcy Court. Mr. Kagan, any order entered in violation of an automatic stay of the Bankruptcy Court is void. Correct. Now the question is, when that stay order is nullified retroactively, are any orders that are entered in violation of the stay now effective orders? Yes or no? No. They remain ineffective because there is no reason for a judge to give credence or encourage people to violate orders in the hope, violate stay orders in the hope they might be vacated at some future date. What's your authority for that proposition? The cases in the Seventh Circuit, I don't remember them off the top of my head, do indicate that they had not decided to say that they're automatically, those orders are automatically valid. But two circuit courts of appeal have, the Ninth and the Third. They both decided that although the orders may void them, I don't suggest that I agree with their use of language. They both say that actions in violation of the stay are void as opposed to voidable but may be revitalized in appropriate circumstances by retroactive annulment. And that is the position of both the Ninth and the Third Circuit Court of Appeal. So if we accept that the Ninth and Third Circuit who have decided the issue, then in that particular case, Judge Gardner was wrong when he vacated the first decision and remanded it back to the commission. And if he was wrong, then the only thing the petitioner would be entitled to is to prosecute his claim and not look. He got that relief and he's not entitled to look to relief against the Williams Awning Company or seek benefits from the Williams Awning Company. The provisions of the state statute obligating the Illinois Insurance Guarantee Fund to investigate these claims and the right, since we were a stranger to this case when it had already started before the liquidation order was entered, the right and the duty of the Guarantee Fund to investigate this when an insurance company did not retain an expert on the key issue of the case is the appropriate purview for the Guarantee Fund. And the Guarantee Fund, as a stranger to the case, should be allowed to investigate the matter and retain experts.  And so what in heaven's name are we reviewing? You want us to review what he did on the merits vis-à-vis the second decision. And if he was wrong on the remand to the circuit court for jurisdictional grounds in the first decision, then the only thing we can do with the second decision is vacate it and send it back to the circuit court and say, give them a hearing on the first decision. That's all we can do. You want us to decide the merits of the case on the second decision when the first decision never should have been vacated. And the circuit court, Judge, even on the second decision, the circuit court has still never reached the issue of Section 537.7, only applies to final judgments as applies to other agreements, waivers, compromise, or settlements. That still has not been reached, and that's something that appropriately should be. Mr. Cahill, if we were to decide these issues in the context of an appeal from the first decision, we'd be rendering an advisory opinion to the circuit court. The circuit court's got to decide it before we get to review it on appeal. They've never decided it in the context of the own of that decision if we follow the Ninth and Third Circuits. You've got the cart before the horse. But there is no reason for, even though due deference to those circuits, there is no reason for courts to encourage people to violate stay orders, either violate stay orders in California, violate stay orders of a bankruptcy court in the hope that they might be overturned or changed to something else. I don't necessarily suggest you. I agree with their use of language. If something is void, it's a nullity. And to the best of my knowledge, the only being that can create something from a nullity is the deity. We make things, but we don't create things out of nothing. So now the question becomes, what authority do we have in the Seventh Circuit that says the Ninth and the Third are wrong? There is too heavy authority from the circuit indicating that they would decline to follow that as a rule, and there is no reason to follow that as a rule. There is no direction from the Seventh Circuit to find that. Here's the problem. You're making an argument, I think, sort of a public policy argument, and it has some intuitive appeal that you don't want to encourage this kind of a behavior. But if the case law doesn't say that, what are we supposed to decide the case on, your belief or argument as to what would be good public policy or existing precedent? But a void order is a void order. The case law doesn't say it's void if it's retroactively, you know, brought into being by lifting the stay. That's what the case law says. But that only allows the petitioner to prosecute a claim against people other than Williams-Owning. That order only applied to Williams-Ownings, the Industrial Commission. The Guarantee Fund was not a party to those proceedings or subject to that order. The provisions of the Guarantee Fund Act would allow the Guarantee Fund to do the investigation. We were a stranger to this case as it started. We tried to undo the damage to that immediately within 14 days of our substitution of a counsel by asking for this relief. The arbitrator believed the only reason he would be able to vacate that is if there was a default and someone didn't show up. The Industrial Commission seems to believe the only reason that 537.7 would apply is if it's an order from a final judgment. The provision of the Guarantee Fund Act is necessary in order to allow investigation of this case and allow some remedy for injured workers and claimants. Thank you. Thank you, Counsel. Counsel, you may reply. May it please the Court? Counsel, my name is Mark Perper and I represent the petitioner, Rick Gibson. As the Court knows, there were two commission decisions. Strike that. There were two claims in this case. One involved a shoulder case. The other involved a total permanent disability based upon brain damage. So this is a serious case. To Justice Hoffman's question regarding the first or second commission decision or the first or second circuit court judgment, I think if Counsel wished to attack the annulment of the bankruptcy stay, the proper procedure would have been to appeal the decision of the bankruptcy court. Whether the fund was technically a party or not, I can tell you Mr. Cahill was present at the hearing when the bankruptcy stay was annulled. No appeal was ever filed from the decision of the bankruptcy court. To attack it in the circuit court of Cook County is really a collateral attack on the lifting or I should say the annulment of the stay. Going to the merits of the appeal, if in fact we're talking about the second commission decision, we're not operating in a vacuum when it comes to the question of minimum contacts between the petitioner and the state of California. The leading case in Illinois is Mahan v. Gunther, which dealt with an almost identical situation, and it's cited at pages 32 through 35 of our brief. I'm sorry about the lengthy quote in the brief, but Mahan is so directly on point that we felt that it bared the lengthy quote. Mahan holds that when a foreign state court issues an anti-suit injunction, and that conservation order on June 4th of 03 was in fact an anti-suit injunction. The foreign state neither acquires personal jurisdiction over the Illinois litigant. I'm sorry. Where the foreign state court issuing the injunction neither seeks nor acquires personal jurisdiction over the Illinois litigant, the anti-suit injunction is not merely voidable, it's void ab initio. And that conservation order was an anti-suit injunction. It's essentially an international shoe-type situation. Whether Rick Gibson had minimum contacts with the state of California is sufficient to vest a California court with personal jurisdiction over Mr. Gibson, consistent with principles of due process. And that, in fact, was the policy underlying Chairman Ruth's order of June 11th, 2003. I think there's some confusion between the conservation order of June 4th of 03 and the actual liquidation order which was entered on July 2nd of 03. That's what triggered the guarantee fund stepping into the shoes of Fremont Casualty, and that's what triggered the 120-day automatic stay by the Department of Insurance. And, in fact, once those proceedings were stayed on July 2nd of 2003, we took no further action in this case. Can I ask a question? Yes, Your Honor. What did the liquidation order actually say? What did the injunction say? We're talking about the conservation order or the? Yeah, the conservation order. The conservation order said? Appointing the conservator for Fremont. Right. That's it. Proceedings were stayed with the exception of proceedings before the California equivalent of what we formally knew as the Industrial Commission. Against whom? Against, I believe, Fremont and its insurers. I'd have to go back. No, it says Fremont or against the conservator. Okay. And why is that? Because in California, the insurance company is a party to workers' compensation cases. Fremont was never a party in Illinois. That's correct. There was never an action against Fremont in Illinois. So what was enjoined? Well, proceedings against Fremont, as Your Honor stated. Right. There was nothing enjoined in Illinois. The action was proceeding on against Williams Lawn. Now, we understand the guarantee fund has got to come in and make good under certain circumstances. But the fact of the matter is, I still think we have the cart before the horse. We're talking about the merits of the second decision. What is the circumstance of the original decision? In my view, Your Honor, the judgment of Judge Gardner, who reviewed the first decision of the commission, was erroneous as a matter of law because he found that the original commission decision was void because it was entered during the pendency of the stay. The stay, it's very confusing because we're dealing with a stay against Williams and a stay involving proceedings against Fremont. Let's try this. Yes. We've got a case pending before the Illinois Industrial Commission post conservatorship order, okay? And while that case is pending, okay, before the Illinois Industrial Commission, Williams Lawn files for bankruptcy. Right. Now, in theory, there's an automatic stay. Subsequent to their filing for bankruptcy, and correct me if my dates are wrong, on January the 18th, 2005, the Illinois Industrial Commission issues its decision, its first decision. On December the 20th, 2006, the bankruptcy court vacates the stay. On September the 24th, 2007, the bankruptcy court nullifies the stay. Correct. Correct? Yes. It isn't until May the 22nd of 2008, after the stay has been nullified, that the circuit court finds that the commission lacked jurisdiction to issue its January 18th, 2005, order. That's exactly correct. So the question becomes, do we follow the Ninth and Third Circuits and that when the bankruptcy court nullified the stay retroactive, that it revitalizes the commission's decision of January the 18th, 2005? Do we follow that, or don't we? We believe that that, certainly that's the law in the majority of the federal circuits. We understand the Seventh Circuit hasn't spoken. So why wouldn't we adopt it here in the absence of authority in the Seventh Circuit? Because no one ever appealed the order annulling the stay. But it's the effect of the stay under federal law. That's what we're looking at. So we're going to have to look at this federal law. But let's take it one step further. Assume we agree with you on your cross appeal that Judge Gardner erred as a matter of law when he vacated the commission's original decision of January the 18th, 2005. What relief can we grant? I think the court could address the merits of the decision that was at that time before Judge Gardner. I didn't decide anything. He just said, vacate it, send it back, do it over. We actually did appeal that judgment, and our appeal was dismissed because it had been remanded. Don't question about it. We dismissed it. But now when you come up on the second decision post-remand, the first thing we look to is the propriety of the original order that sent it back on remand. And it occurs to me that if we agree with you on the cross appeal, the only thing we can do is send this thing back to the circuit court and say, decide it. Otherwise, what are we reviewing? We're reviewing something that he had no authority to do. Our cross appeal was based on the denial of penalties. But I do think whether I cross appeal or not, respondent's appeal brings both circuit court judgments before this court, regardless of what I do. And I think that's, based on the case law dealing with this procedural situation, I think that's the, that is the law. Unless I'm missing something here. I'm on page 22 of your brief. Oh, there's no question. I raised the issue, Your Honor. And the issue you appeal on page 22 is the circuit court errors a matter of law in setting aside the commission's decision dated January the 182005 by reason of it having been entered during dependency of a bankruptcy state where the state had been nullified. Whether I raise that issue or not, I think Judge Gardner's order is before the court, just based on the cases that we cited, Downey and Stockton. No, no, it is. If we agree with you, then what do we do? I think the court in its discretion could address the merits. I hear what Your Honor is suggesting, that it has to be sent back to the circuit court to now address the merits. Whether that's a good or bad use of judicial economy, I leave it to the court. Well, you know, when we're dealing with jurisdiction, judicial economy is irrelevant. Yeah. You can't stipulate to, you can't confer even by agreement, you realize, jurisdiction on this Court if we don't have it. I understand that. Go ahead. With the limited amount of time I have, I just want to address two things. The effect of the anti-suit injunction, which was the conservation order, and also counsel raised 537.7 of the insurance code. The Uniform Act gives Illinois the, allows Illinois to honor anti-suit injunctions from other states, but it need not do so. And the U.S. Supreme Court has said in Baker v. General Motors that anti-suit injunctions fall outside the ambit of full faith and credit. It's an issue of comedy. It's not an issue of full faith and credit. It's an issue of comedy. Comedy, indeed. And we may follow them, but we need not. And certainly Mahan and Grand Trunk Railroad, Grand Trunk Western Railroad, make clear that Illinois has a strong public policy against honoring foreign anti-suit injunctions. Briefly moving on to 537.7, all the cases that the fund has cited regarding 537.7 indicate that it's essentially a relief from judgment statute. I would compare it to something like a 213.01. At the commission level, they cited the Zorner case. In this court, they've cited the Gines case. Certainly, Gines was a case where there was actually no defense presented. It was a case where the defendant withdrew, the defendant's counsel withdrew. The case proceeded to trial during the pendency of the 120-day stay order that was issued following the liquidation. None of those things happened in this case. The liquidation order was entered on July 2nd of 03, and there were no proceedings in violation of that stay. So 537.7, as the commission stated in its decision, was never triggered in this case. And the fund has cited no cases directly on point holding that 537.7 was triggered in this case. Counsel, your time has expired. I thank you for your attention. Thank you, counsel. Counsel may rebuttal. The state statute, the fact that an order is entered in California is merely the trigger for the Illinois statutes that allow and require the equal enforcement of out-of-state conservative orders. Would you respond to my question when I asked them what the exact wording of that conservative order was that stayed against whom? It does indicate that it barred prosecution of claims in Illinois under the same statute. Claims against whom? Against Fremont Casualty. Or the conservative? Or the conservative. Does it say anything about claims against their insurance? In the same thing. Not in that order. But in the State of California and the State of Illinois, the Illinois statutes have required them to enforce these orders so there's equal enforcement across the States to Illinois residents as opposed to other residents. That is triggered by the state statute. It's not necessarily triggered by the out-of-court state judgment order. Not necessarily required by it. Under the Illinois statute, although California allows automatic direct action against the insurance company, in Illinois the insurance company under McMahon v. Industrial Commission penalties against the insurer and the statute that allows the naming of the insurer, the insurer is still allowed to be a direct party and is still an interested party in the action. But Fremont was not. Fremont was not a direct party at the time that this order was entered. They could have been and they would have had an obligation under the McMahon case for any award for benefits or penalties. The Supreme Court held that in McMahon against the individual insured, even though the actions were the improper actions of the individual insured. They held the insurer liable. And in this case, since this defendant, the commission has found that this defense attorney did adequately defend the case, when he was faced with a prospect of the insurance company going bankrupt and he didn't notify that it's likely there's no payor in the case. He didn't notify the individual insured of the liability that they were going to be assessed with or take any steps to address the court regarding the fact that an interested party who will eventually be responsible for paying this might need to be brought into the case. I think that is error and that's why this should be reversed and, if need be, unfortunately remanded. But we attempted to correct this mistake and have this information in the case evaluated on December 19, 2003. We filed a motion two weeks after I filed my appearance in this case and, unfortunately, we've gone for eight years so far. And it would be unfortunate to have it remanded on a case when the investigation should have been done and allowed so the case could be prosecuted. And I don't believe there's any reason on the other cross-appeal issues that the Illinois Insurance Guarantee Fund should be obligated to pay penalties or extraordinary damages on a case. And the statute certainly would preclude that. I don't think the citations in the Vermont, Rhode Island, or other cases cited in the brief would be compelling or require this court to find that penalties should be assessed against the fund. Thank you, counsel. This matter will be taken under advisement. Again, for the record, Presiding Judge John McCullough is a fully participating member of this court in all of these matters today. And the court will stand in recess until 11 a.m.